UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN VÁZQUEZ, PABLO MARÍN, CIRILO PACHECO, OSIEL VÁZQUEZ, ALEJANDRO LOAEZA, EMITERIO PACHECO, HECTOR AVENDAÑO, EFREN PACHECO, AVELINO CRUZ, and RENE PACHECO on behalf of themselves and all other similarly situated workers, <br><br>v.<br><br>LAMONT FRUIT FARM, INC. | Civil Action No.<br><br>COMPLAINT<br>Class Action |

PRELIMINARY STATEMENT

1. This is a Rule 23 class action brought by 10 Mexican farmworkers on behalf of themselves and other similarly situated foreign workers who were employed by Lamont Fruit Farm, Inc., to secure and vindicate rights afforded them by their employment contracts, which incorporated explicit terms mandated by federal regulations, and by the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA").

2. Plaintiffs allege that the violations at issue arose out of Defendant's policy and practice applicable to all foreign agricultural workers employed during every apple harvest season between the years 2000 through 2005.

3. Plaintiffs also allege that Defendant violated New York Labor Law.

4. Plaintiffs seek money damages on behalf of themselves and other class members to make them whole for the losses caused as a result of Defendant's unlawful conduct.

JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 29 U.S.C. § 216(b) (Fair Labor Standards Act).

6. This Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367 (Supplemental Jurisdiction). All state law claims involve the same transaction and occurrence as the federal claims.

## VENUE

7. Venue in the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's unlawful employment practices were committed in, and the Defendant's place of business is in Orleans County, New York.

## STRUCTURE OF THE "H-2A PROGRAM"

8. Pursuant to federal statute and regulations, an agricultural employer in the United States may import temporary foreign workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough workers in the United States to perform the job and (2) the employment of the H-2A workers will not adversely affect the wages and working conditions of workers in the United States who are similarly employed.

9. Temporary foreign agricultural workers are commonly referred to as "H-2A workers" because of their H-2A non-immigrant visa classification under the federal Immigration and Naturalization Act. See 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

10. Employers requesting H-2A workers must file a temporary labor certification application with the U.S. DOL office responsible for the area where the job is located. 20 C.F.R. §§ 655.101(a)(1) and (b)(1). The application must include a job offer that complies with the requirements found at 20 C.F.R. §§ 655.102 and 653.501. These federal regulations establish the minimum benefits, wages, and working conditions required in an H-2A job offer in order to avoid adversely affecting similarly employed workers. 20 C.F.R. §§ 655.0(a)(2) and 655.102.

11. An Agricultural and Food Processing Clearance Order, U.S. DOL Employment and Training Administration Form 790, commonly referred to as a "clearance order," describes all terms and conditions of the job and is used to recruit workers in the United States and abroad.

12. The employer or its agent must certify as to all material terms and conditions of the job.

13. The clearance order, which incorporates federal requirements, is the employment contract between the employer and the workers in the absence of another contract.  See 20 C.F.R. § 655.102(b)(14).

14. Federal regulations mandate that the employment contract explicitly incorporate the federal regulations at 20 C.F.R. § 655 Subpart B, including the following:

   A. that the employer will comply with all applicable federal and state employment-related laws, 20 C.F.R. § 655.103(b);

   B. that the employer will provide to each worker a copy of the employment contract by the first day of work, 20 C.F.R. § 655.102(b)(14);

   C. that all work would be paid at a rate of at least the adverse effect wage rate ("AEWR") in effect at the time the work was performed, 20 C.F.R. § 655.102(b)(9);

   D. that workers, upon completion of 50% of the contract period, would be reimbursed the costs of transportation and subsistence costs while traveling from the place from which the worker came to the place of employment, 20 C.F.R. § 655.102(b)(5)(i);

   E. that workers, upon completion of the contract, would be reimbursed the costs of their return trip from the place of employment to the place from which the workers came, 20 C.F.R. § 655.102(b)(5)(ii);

   F. that workers would be provided with free housing that complies with applicable health and safety standards, 20 C.F.R. § 655.102(b)(1); and

| | | |
|---|---|---|
| | G. | that retaliation is prohibited for exercising rights under the contract, 20 C.F.R. § 655.103(g). |
| 15. | | If it is determined that sufficient workers are not available to fill the jobs requested under the clearance order, the U.S. DOL certifies the need for temporary foreign workers, and the U.S. government issues H-2A visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(A) for the number of job opportunities requested by the employer and not filled by workers in the United States. |
| 16. | | The employer is responsible for identifying, recruiting and selecting the foreign workforce. |

PARTIES

17. Plaintiff Juan Vázquez is a citizen of Mexico who, at times relevant herein during 2000, 2001, 2002, 2003 and 2004 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

18. Plaintiff Pablo Marín is a citizen of Mexico who, at times relevant herein during 2000, 2002, 2003, 2004 and 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

19. Plaintiff Cirilo Pacheco is a citizen of Mexico who, at times relevant herein during 2002, 2003, 2004 and 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

20. Plaintiff Osiel Vázquez is a citizen of Mexico who, at times relevant herein during 2000, 2001, 2002, 2003 and 2004 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

21. Plaintiff Alejandro Loaeza is a citizen of Mexico who, at times relevant herein during 2000, 2001, 2002, 2003 and 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

22. Plaintiff Emiterio Pacheco is a citizen of Mexico who, at times relevant herein during 2002 and 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during those seasons.

23. Plaintiff Hector Avendaño is a citizen of Mexico who, at times relevant herein during 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during that season.

24. Plaintiff Efren Pacheco is a citizen of Mexico who, at times relevant herein during 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during that season.

25. Plaintiff Avelino Cruz is a citizen of Mexico who, at times relevant herein during 2004 and 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during that season.

26. Plaintiff Rene Pacheco is a citizen of Mexico who, at times relevant herein during 2005 was lawfully admitted to the United States on a temporary H-2A visa for employment with Defendant Lamont Fruit Farm, Inc. pursuant to the clearance order contracts in effect during that season.

27. Defendant Lamont Fruit Farm, Inc. is a New York corporation doing business in Orleans County, New York and other locations.

28. Defendant owns and operates a business engaged in the production of apples and other agricultural products.

29. At all times relevant to this action, Defendant was an employer as defined by the FLSA, 29 U.S.C. § 203(g).

30. At all times relevant to this action, Defendant was an enterprise engaged in commerce as defined by the FLSA, 29 U.S.C. §§ 203(r) and (s).

31. At all times relevant to this action, Defendant was an employer as defined by the H-2A program regulations, 20 C.F.R. § 655.100(b).

32. At all times relevant to this action, Defendant was an employer as defined by New York Labor Law, §§ 190-1.3 and 671.

## CLASS ACTION ALLEGATIONS

33. All claims set forth in the Second Cause of Action are brought by the Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

34. The Plaintiffs seek to represent a class consisting of all H-2A workers who were employed by Lamont Fruit Farm, Inc. during the 2000, 2001, 2002, 2003, 2004 or 2005 apple harvest seasons.

35. The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the class is known only to the Defendant. However, the class is believed to include over 200 individuals. The class is comprised of indigent migrant agricultural workers who are citizens of Mexico. The class members are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members makes the maintenance of separate actions by each class member economically infeasible.

36. There are questions of law and fact common to the class. These common legal and factual questions include whether the Defendant breached the terms of its clearance orders by failing to pay the class members the wages established in the clearance order or the Federal minimum wage, and to provide housing and transportation benefits as mandated by their employment contract and the federal regulations implementing the H-2A program each year at issue in this action.

37. The claims of the Plaintiffs are typical of and common to those of the other class members and these claims predominate over any questions affecting only individual class members. The Plaintiffs have the same interests as do other members of the class and will vigorously prosecute those interests on behalf of the class.

38. Plaintiffs will fairly and adequately represent the interests of the class. The Plaintiffs' interests are in no way antagonistic or adverse to those of the other class members.

39. Plaintiffs' counsel is experienced in actions by H-2A workers to enforce their rights under their employment contracts and has handled class actions in the federal courts. Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Rule 23(b)(3). Additionally, Plaintiffs' counsel have experience litigating class actions in which a large number of class members reside outside of the United States, and specifically in Mexico.

40. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

   A. The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

   B. Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

C. Upon information and belief, there have been no other suits commenced against Lamont Fruit Farm, Inc. to determine the legal questions presented by this action;

D. It is desirable that the claims be heard in this forum because the Defendant resides in this district and the cause of action arose in this district; and

E. A class action can be managed without undue difficulty because the Defendant has over the course of the last six years regularly committed the violations complained of herein, and the Defendant is required by the regulations governing the H-2A program to maintain detailed records concerning each member of the proposed class.

## FACTUAL ALLEGATIONS

41. In each year relevant to this action, 2000, 2001, 2002, 2003, 2004 and 2005, Defendant petitioned the U.S. Department of Labor for permission to import temporary foreign agricultural workers through the H-2A program, as described above.

42. In each year 2000, 2001, 2002, 2003, 2004 and 2005 Defendant utilized the services of International Labor Management Company ("ILMC") to prepare and file applications, which included the clearance order, to the U.S. government for H-2A workers as an agent on its behalf.

43. Each clearance order is attached to this Complaint as composite Exhibit A.

44. In the 2000 clearance order, Defendant requested 55 workers to thin and/or harvest apples.

45. The period of employment for the 2000 clearance order was from August 28, 2000 to November 1, 2000; the start date for the 2000 clearance order was changed to September 7, 2000.

46. The federally mandated AEWR in effect during the duration of the 2000 clearance order was $7.68 per hour.

47. Tish Sowards, Regional Director of ILMC signed the 2000 clearance order on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

48. Upon information and belief, in 2000, Defendant hired 55 Mexican citizens under H-2A visas.

49. In the 2001 clearance order, Defendant requested 55 workers to thin and/or harvest apples.

50. The period of employment for the 2001 clearance order was from September 7, 2001 to November 1, [2001].

51. The federally mandated AEWR in effect during the duration of the 2001 clearance order was $7.68 per hour.

52. Craig S. Eury, Jr., President of ILMC, signed the 2001 clearance order on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

53. Upon information and belief, in 2001, Defendant hired 55 Mexican nationals under H-2A visas.

54. In 2002, Defendant submitted, and the U.S. DOL approved, two clearance orders.

55. In the first 2002 clearance order, Defendant sought 30 workers to thin and/or harvest apples.

56. In the second 2002 clearance order, Defendant sought 35 workers to thin and/or harvest apples.

57. The period of employment for the first 2002 clearance order was from August 26, 2002 to November 2, 2002.

58. The period of employment for the second 2002 clearance order was from September 2, 2002 to November 9, 2002.

59. The federally mandated AEWR in effect during the duration of the 2002 clearance orders was $7.94 per hour.

60. Craig S. Eury, Jr., President of ILMC, signed the 2002 clearance orders on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

61. Upon information and belief, in 2002, Defendant hired 65 Mexican nationals under H-2A visas.

62. In the 2003 clearance order, Defendant requested 65 workers to thin and/or harvest apples.

63. The period of employment for the 2003 clearance order was from August 26, 2003 to November 1, 2003.

64. The AEWR in effect during the duration of the 2003 clearance orders was $8.53 per hour.

65. Craig S. Eury, Jr., President of ILMC, signed the 2003 clearance order on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

66. Upon information and belief, in 2003, Defendant hired 65 Mexican nationals under H-2A visas.

67. In the 2004 clearance order, Defendant requested 72 workers to thin and/or harvest apples.

68. The period of employment for the 2004 clearance order was from August 31, 2004 to November 5, 2004.

69. The federally mandated AEWR in effect during the duration of the 2004 clearance orders was $9.01 per hour.

70. Cheryl Yaxley, Office Manager of Lamont Fruit Farm, Inc. signed the 2004 clearance order on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

71. Upon information and belief, in 2004, Defendant hired 72 Mexican nationals under H-2A visas.

72. In the 2005 clearance order, Defendant requested 70 workers to thin and/or harvest apples.

73. The period of employment for the 2005 clearance order was from August 29, 2005 to November 2, 2005.

74. The federally mandated AEWR in effect during the duration of the 2005 clearance orders was $9.05 per hour.

75. Cheryl Yaxley, Office Manager of Lamont Fruit Farm, Inc. signed the 2005 clearance order on behalf of Defendant, certifying that it described the actual and material terms and conditions of the job.

76. Upon information and belief, in 2005, Defendant hired 70 Mexican nationals under H-2A visas.

77. In 2000, 2001, 2002, 2003, 2004 and 2005, the U.S. DOL certified the need for the requested temporary foreign agricultural workers, and the U.S. government issued H-2A visas for the number of job opportunities requested by Defendant.

78. The 2000, 2001, 2002, 2003, 2004 and 2005 clearance orders contained all material terms and conditions of the job at Defendant's farm.

79. No employment contracts pertaining to H-2A workers, other than the aforementioned clearance orders, were in effect at Defendant's farm in 2000, 2001, 2002, 2003, 2004 or 2005.

80. As such, the aforementioned clearance orders constituted the employment contract between the Defendant and each H-2A worker employed there under during each respective season at issue in this action.

81. In each season at issue in this action, 2000, 2001, 2002, 2003, 2004 and 2005, Defendant failed to provide to Plaintiffs a copy of the employment contract at the commencement of their employment.

82. In 2000, 2001, 2002, 2003, and 2004 the Defendant failed to provide to Plaintiffs a copy of the employment contract at any time.

83. Upon information and belief, in each year relevant to this action, Defendant utilized the services of Del Al Mexico, S.A. de C.V. and/ or Manpower of America, among others, to locate, recruit, and hire Mexican workers, including the Plaintiffs and class members, to work pursuant to the clearance orders submitted by the Defendant and their agent ILMC and approved by the U.S. DOL.

84. All actions taken by Del Al Mexico, S.A. de C.V. and/or Manpower of America and others with locating, recruiting and hiring Plaintiffs and class members were authorized, either explicitly or implicitly by Defendant, and were covered under the scope of an agency relationship.

85. Upon their recruitment by Defendant's agents in their home towns Mexico, each Plaintiff accepted the terms and conditions of the job at Defendant's farm in each season each Plaintiff was employed.

86. In order to get to Defendant's operations and commence work under the 2000, 2001, 2002, 2003, 2004, and 2005 contracts, Plaintiffs and other similarly situated H-2A workers, incurred various necessary fees and expenses, including, but not limited to:

   A. Recruitment fees;
   B. Visa fees;
   C. Passport expenses;
   D. Bus fare from their home villages to U.S. Consular offices in Monterrey, Mexico;
   E. Bus fare from Monterrey, Mexico to the U.S./Mexico border;
   F. Border crossing fee;

    G.  Bus fare from the U.S./Mexico border to Albion, New York; and

87. Other travel-related expenses, including food costs, for the travel described above. The out-of-pocket expenses described *supra* were primarily for the benefit or convenience of the Defendant within the meaning of the FLSA, 29 U.S.C. § 203(m) and its attendant regulations, 29 C.F.R. § 531.36(b).

88. As a matter of policy that Defendant applied to all H-2A workers hired during the relevant seasons, Defendant did not reimburse Plaintiffs or other H-2A workers any of these out of pocket expenses during their first pay period in any season any Plaintiff worked.

89. As a result of Defendant's policy to not provide reimbursement for these out-of-pocket expenses in the first week of work, Plaintiffs and other similarly situated H-2A workers were not paid at least the FLSA minimum wage of $5.15 per hour or the AEWR in effect in each relevant season.

90. At no time did Defendant reimburse to any Plaintiff or other similarly situated H-2A worker their recruitment fees, visa fees, passport expenses, or border crossing fees.

91. At no time during any season, did Defendant reimburse to Plaintiffs Juan Vázquez, Osiel Vázquez and Pablo Marín their bus fare from their home villages to U.S. Consular offices in Monterrey, Mexico or their bus fare from Monterrey, Mexico to the U.S./ Mexico border.

92. At no time during any season other than 2005, did Defendant reimburse to Plaintiffs Cirilo Pacheco, Alejandro Loaeza, Emiterio Pacheco, or Avelino Cruz their bus fare from their home villages to U.S. Consular offices in Monterrey, Mexico or their bus fare from Monterrey, Mexico to the U.S./ Mexico border.

93. Plaintiffs Juan Vázquez, Osiel Vázquez and Pablo Marín were provided housing pursuant to federal regulations incorporated in their contract at the Ramshaw Road labor camp in each season they were employed.

94. Plaintiffs Cirilo Pacheco, Alejandro Loaeza, Rene Pacheco, Emiterio Pacheco, Efren Pacheco, Hector Avendaño, and Avelino Cruz were provided housing pursuant to federal regulations incorporated in their contract at the Densmore Road labor camp in each season they were employed.

95. In each season Plaintiffs Juan Vázquez, Osiel Vázquez and Pablo Marín were employed, they remained at Defendant's farm for the duration of the contract period.

96. In each season Plaintiffs Cirilo Pacheco, Alejandro Loaeza, Rene Pacheco Ibarra, Emiterio Pacheco, Efren Pacheco, Hector Avendaño, and Avelino Cruz were employed, they remained at Defendant's farm for several weeks, and were then transferred by Defendant to work for another farm for the duration of the contract period.

97. The housing provided to Plaintiffs at both labor camps did not meet applicable health and safety standards in any season, among the violations were: extended periods of substandard water quality at the Densmore Road camp in 2002, overcrowding at the Densmore and Ramshaw Road camps in 2005, fire safety problems (inoperable smoke detectors and fire extinguishers) at the Ramshaw Road camp from 2000 through 2005, and at the Densmore Road camp from 2002 through 2004, and vermin infestation at the Densmore Road camp from 2001 through 2005.

98. Defendant also violated applicable vehicle safety standards by failing to provide safe transport to Plaintiffs during the 2004 season.

99. Defendant also violated applicable OSHA standards in the 2004 season by failing to provide adequate field sanitation to Plaintiffs.

100. Upon information and belief, Defendant plans to utilize the H-2A program to obtain Mexican workers for its labor needs in the current 2006 season, and in future seasons.

101. Upon information and belief, the same practices complained of in this complaint will therefore be repeated in the future.

## FIRST CAUSE OF ACTION

## FAIR LABOR STANDARDS ACT

102. Plaintiffs incorporate the paragraphs above.

103. This cause sets forth a claim under the FLSA, 29 U.S.C. § 216(b) for damages based on Defendant' failure to pay the proper wages due to Plaintiffs during the first week of work during the years 2003, 2004 and 2005.

104. At no time relevant to this action did the Defendants post in a conspicuous place a poster or other written statement advising the Plaintiffs of their right to the minimum wage under the FLSA. Such posting is required by regulations issued under the FLSA, 29 C.F.R. § 516.4.

105. At all times relevant to this action, Plaintiffs were employed by Defendant within the meaning of the FLSA, 29 U.S.C. § 203.

106. At all times relevant to this action, Plaintiffs were engaged in the production of goods for distribution in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 207(a).

107. Defendant willfully violated the FLSA 29 U.S.C. § 206 by failing to reimburse Plaintiffs and similarly situated workers for out-of-pocket expenses incurred primarily for the benefit or convenience of the Defendant which served to reduce each Plaintiff's net earnings below the mandated wage rate during the first week of work during the years 2003, 2004 and 2005.

108. As a consequence of Defendant' willful violation of Plaintiffs' FLSA rights, Plaintiffs and other similarly situated workers are entitled to recover from Defendant their unpaid wages and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT- RULE 23 CLASS ACTION

109. Plaintiffs incorporate the paragraphs above.

110. This cause sets forth a claim for relief by the Plaintiffs and the other members of the class for damages arising from the Defendant's breach of the employment contract in each season each Plaintiff was employed, as embodied in the clearance orders the Defendant filed as part of its temporary labor certification applications.

111. In each relevant season, Defendant offered and Plaintiffs accepted employment on specific terms and conditions contained in the clearance orders described <u>supra</u>, the terms of which are supplied by federal regulations at 20 C.F.R. §§ 653.501, 655.102, 655.103.

112. Specific terms and conditions mandated by federal law are certified to and detailed in the written employment contracts, attached hereto as composite Exhibit A.

113. In all seasons relevant to this action, Defendant breached the employment contract by not providing Plaintiffs and other class members a copy of their employment contract at the commencement of their employment.

114. In the 2000, 2001, 2002, 2003, and 2004 seasons, Defendant breached the employment contract by not providing Plaintiffs and other class members a copy of their employment contract at any time.

115. In each season each Plaintiff and each class member was employed, Defendant breached their employment contract by paying less than the federally mandated AEWR for their work in each week they were employed, in part because each Plaintiff and class member incurred out-of-pocket expenses primarily for the benefit of their employer which Defendant did not reimburse, and in part because Defendant did not keep adequate payroll records.

116. The Defendant also breached its employment contract with Plaintiffs and other class members by failing to comply with the minimum wage provisions of the FLSA.

117. During the 2005 season, the Defendant breached the employment contract with Plaintiff Pablo Marín and other class members by failing to reimburse them for the full amount of

his transportation and subsistence costs incurred on his inbound trip from his home in Mexico to New York.

118. In 2000, 2001, 2002, 2003 and 2004, the Defendant breached the employment contract with all Plaintiffs by failing to reimburse them for the full amount of their transportation and subsistence costs incurred on their inbound trip from their homes in Mexico to New York.

119. In each season Plaintiffs Juan Vázquez, Osiel Vázquez and Pablo Marín were employed, Defendant breached the employment contract with them and other class members by failing to reimburse them for the full amount of their transportation and subsistence costs incurred on their outbound trip from New York to their homes in Mexico.

120. During each season each Plaintiff was employed, the Defendant breached the employment contract with all Plaintiffs by providing them with housing that did not meet applicable health and safety standards.

121. During the 2004 season, Defendant breached the employment contract with all Plaintiffs who worked during that season by failing to comply with applicable vehicle safety and OSHA regulations.

122. As a result of the breaches of employment contract set forth in this cause, Plaintiffs and other class members suffered damages and are entitled to recover from Defendant all actual, incidental and consequential damages resulting from Defendant's breaches of employment contract.

THIRD CAUSE OF ACTION

NEW YORK LABOR LAW

123. Plaintiffs incorporate the paragraphs above.

124. This cause sets forth a claim for relief based on Defendant's violation of New York Labor Law in each season each Plaintiff was employed.

125. Defendant violated New York Labor Law §§ 670 et seq. by failing to pay Plaintiffs at least the state-mandated minimum wage in each week during each season each Plaintiff was employed.

126. Defendant failed to keep true and accurate records of hours worked by Plaintiffs, in violation of New York Labor Law § 679.

127. Defendant violated New York Labor Law § 193(2) by requiring Plaintiffs to make payments by separate transaction when those payments would not have been allowable as deductions under § 193(1).

128. Defendant violated the notice and record-keeping requirements of New York Labor Law § 195.

129. Defendant's failure to pay Plaintiffs the wages which were due and when they were due was willful within the meaning of New York Labor Law § 681.

130. Plaintiffs are entitled to their unpaid wages, plus an additional amount as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions, in accordance with New York Labor Law § 681(1).

PRAYER FOR RELIEF WHEREFORE, Plaintiffs request that this Court grant them the following relief.

    I. Award Plaintiffs their unpaid wages and an equal amount in liquidated damages for Defendant's violations of the FLSA.

    II. Award Plaintiffs and all similarly situated workers their actual, incidental and consequential damages resulting from Defendant's breaches of employment contract.

    III. Award Plaintiffs their unpaid wages and liquidated damages for Defendant's violations of New York Labor Law.

    IV. Award Plaintiffs their litigation expenses, attorneys fees and costs of court.

V.    Award Plaintiffs pre-judgment and post-judgment interest to the extent allowed by law.

VI.    Award Plaintiffs such other relief as this Court deems just and proper.

Dated: August 28, 2006

RESPECTFULLY SUBMITTED,

**FARMWORKER LEGAL SERVICES OF NEW YORK, INC.**

By:   *s/ Erin F. Casey*
     Erin F. Casey, Esq.
     Anita C. Butera, Esq.
     *Attorneys for Plaintiffs*
     1187 Culver Road
     Rochester, NY 14609
     Telephone: (585) 325-3050
     Facsimile: (585) 325-7614
     Email: ecasey@wnylc.com
           abutera@wnylc.com

**WOLFORD & LECLAIR LLP**

By:   *s/ Steven E. Cole*
     Steven E. Cole, Esq.
     Laurie A. Giordano, Esq.
     *Attorneys for Plaintiffs*
     600 Reynolds Arcade Building
     16 East Main Street
     Rochester, New York 14614
     Telephone: (585) 325-8000
     Facsimile: (585) 325-8009
     Email: scole@wolfordleclair.com
           lgiordano@wolfordleclair.com