UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUAN VAZQUEZ, PABLO MARIN,
CIRILO PACHECO, OSIEL VAZQUEZ,
ALEJANDRO LOAEZA, EMITERIO
PACHECO, HECTOR AVENDANO,
EFREN PACHECO, AVELINO CRUZ,
and RENE PACHECO, on behalf of
themselves and all other similarly
situated workers,

                        Plaintiffs,

          v.                                                    **DECISION AND ORDER**
                                                                06-CV-582S
LAMONT FRUIT FARM, INC.,

                        Defendant.

## I.  INTRODUCTION

        Plaintiffs brought this suit against Defendant Lamont Fruit Farm, Inc., for alleged

violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* and New York State

labor law, and for breach of contract.  (Compl. (Docket No. 1) ¶¶ 102-30.)

        Pending before this Court are the following motions: (1) Plaintiffs' Motion for Class

Certification (Docket No. 15) with respect to the second cause of action (breach of

contract);[1] (2) Defendant's Motion for Partial Summary Judgment (Docket No. 28);[2] and (3)

---

[1]In support of their motion, Plaintiffs have filed the declaration of Anita Butera (Docket No. 16), a memorandum of law (Docket No. 16, Ex. 12), several supporting exhibits (Docket No. 16), several additional declarations (Docket Nos. 17-20), and a reply memorandum (Docket No. 30).  Defendant has filed the declaration of Roderick Farrow (Docket No. 24), the affidavit of Jose Iniguez (Docket No. 25), and a memorandum of law (Docket No. 26, re-filed at Docket No. 29).

[2]In support of its motion, Defendant has filed a memorandum of law (Docket No. 28, Ex. 2), several supporting declarations and exhibits (Docket No. 28 and attachments thereto), and a reply memorandum (Docket No. 32).  Plaintiffs filed a memorandum in opposition to the motion.  (Docket No. 31, Ex. 19.)  Additionally, Defendant filed a motion to reopen argument on summary judgment (Docket

Plaintiffs' Motion for Partial Summary Judgment (Docket No. 31).[3]  For the reasons stated below, this Court finds that Plaintiffs' motion for class certification should be granted.  The parties' cross-motions for partial summary judgment will be denied without prejudice.


## II. BACKGROUND

### A.  Factual Background

Plaintiffs are ten Mexican citizens who came from Mexico to work on a seasonal basis at Defendant's New York farm during some or all of the 2000, 2001, 2002, 2003, 2004, and 2005 apple harvesting seasons.  (Pls.' Statement of Undisputed Facts ("Pls.' Statement") ¶ 1; Def.'s Resp. to Pls.' Statement (Docket No. 32, Ex. 15) at 1.)  Plaintiffs hold themselves out as representatives of a class consisting of all foreign farm workers who entered the United States to work for Defendant during those seasons (collectively "the Workers").  (Pls.' Statement ¶ 1; Def.'s Resp. to Pls.' Statement at 1.)

In each of the years at issue in this case, Defendant, a farming company, petitioned the United States Department of Labor for permission to hire temporary foreign agricultural workers through the federal "H-2A" immigration program, 8 U.S.C. § 1188.  (Compl. ¶ 41; Answer at 3.)  Under the H-2A program, an employer is required to submit a "clearance order" setting forth the terms and conditions of employment for the farm workers.  (Compl.

---

43), seeking to bring this Court's attention to new developments in the law.  This Court permitted Defendant to reopen the motion to make these arguments.  (Docket No. 45.)  Plaintiffs filed a memorandum in opposition to Defendant's interpretation of the legal developments (Docket No. 48), to which Defendant filed a reply memorandum.  (Docket No. 50.)

[3]In support of their motion, Plaintiffs have filed a statement of undisputed facts (Docket No. 31, Ex. 2), a memorandum of law (Docket No. 31, Ex. 19), several supporting exhibits (Docket No. 31 and attachments thereto), and a reply memorandum with exhibits (Docket No. 35).  Defendant has filed a memorandum in opposition to the motion.  (Docket No. 32.)

¶ 11; Answer at 2.)  The employer is required to certify to all of the material terms and conditions in the clearance order.  (Compl. ¶ 12; Answer at 2.)  The clearance order becomes the effective employment contract between the employer and the workers. (Compl. ¶ 13; Answer at 2.)

For each season, Defendant, with the help of International Labor Management Company ("ILMC"), a foreign labor broker, submitted one or more certified clearance orders requesting permission to hire foreign workers.  (Compl. ¶¶ 42; Answer at 3.) Through the clearance orders, Defendant sought to hire between 55 and 72 workers for each given season.  (Compl. ¶¶ 44, 49, 55, 56, 62, 67, 72; Answer at 3.)

The clearance orders were required to provide that the workers' wage would be no less than the"adverse effect wage rate" ("AEWR"), which is the wage rate that has been determined will not adversely affect the employment conditions and wages of similarly situated domestic workers, see 20 C.F.R. §§ 655.103, in effect at the time the work was performed.  (Compl. ¶ 14; Answer at 2.)    During the seasons in question, the AEWR ranged from $7.68 to $9.05 per hour.  (Pls.' Statement ¶¶ 20-24; Def.'s Resp. to Pls.' Statement at 1.)

Prior to beginning work for Defendant, the Workers obtained travel documents and traveled to Defendant's farm from various locations in Mexico.  (Compl. ¶ 86.)  It is undisputed that the Workers paid up-front for their own transportation and subsistence costs related to their journey to New York. (Pls.' Statement ¶¶ 3-5; see Decl. of Roderick Farrow[4] (Docket No. 24) ¶ 25.)  Defendant, as a matter of business policy, did not

---

[4]Mr. Farrow is one of Defendant's equity owners.  (Farrow Decl. ¶ 3.)

reimburse the Workers for their recruitment costs, visa fees, passport fees, or border crossing fees.  (Farrow Decl. ¶ 12.)

During their employment with Defendant, Plaintiffs were housed in one of several labor camps owned by the Defendant.  (Compl. ¶¶ 93-94.)  These camps were known as the Densmore Road and Ramshaw Road camps.  (Id.)

## B.  Procedural Background

This case was filed on August 28, 2006.  (Docket No. 1.)  Originally, this case was before the Honorable John T. Elfvin, Senior United States District Judge; it was reassigned to the undersigned on October 17, 2007.  (Docket No. 36.)

The named Plaintiffs bring a claim under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), alleging that Defendant (1) failed to pay them the required wages during their first weeks of work in 2003, 2004, and 2005; (2) failed to reimburse them for expenses incurred for Defendant's benefit during 2003, 2004, and 2005; and (3) failed to conspicuously post a written advisement of their rights.  (Compl. ¶¶ 103, 104, 107.)

Plaintiffs also assert a putative class action claim on behalf of themselves and the other Workers for breach of contract, alleging that Defendant breached the clearance orders by (1) failing to provide copies of the clearance orders to the Workers at the time they began work; (2) paying less than the federally mandated AEWR to the Workers, in part due to the fact that the Workers were not reimbursed for certain expenses benefitting Defendant; (3) failing to comply with federal minimum wage provisions; (4) failing to reimburse the Workers for their full transportation and subsistence costs for their trips to and from Mexico; (5) failing to provide housing meeting applicable health and safety standards; and (6) failing to comply with applicable vehicle safety standards and OSHA

regulations.  (Compl. ¶¶ 110-122.)

Finally, the named Plaintiffs bring a claim under New York labor law, citing the failure to pay them the state minimum wage in every week of employment and to keep adequate records, and alleging that Defendant violated New York Labor Law § 193(2) by requiring Plaintiffs to incur expenses that could not legally be deducted from their pay. (Compl. ¶¶ 125-27.)

On March 30, 2007, Plaintiffs moved for class certification under Federal Rule of Civil Procedure 23, and for appointment of class counsel, with respect to the state-law breach of contract claim only.  (Pls.' Mem. in Support of Mot. to Certify Class at 1.) Plaintiffs also sought an extension of time to obtain additional declarations from various Workers.  (Docket No. 15.)  Subsequently, Plaintiffs filed several additional declarations from Workers.  (Docket Nos. 17-20.)  Defendant filed an opposition to the motion for class certification.  (Docket No. 29.)  The parties appeared before Judge Elfvin on June 8, 2007, for oral argument on the motion to certify the class.

On May 18, 2007, Defendant filed a motion for partial summary judgment.  (Docket No. 28.)  Plaintiffs filed a cross-motion for partial summary judgment on July 20, 2007. (Docket No. 31.)

## III.  DISCUSSION

### A.  Motion for Class Certification

Plaintiffs seek certification of a single class under Federal Rule of Civil Procedure 23(b)(3).  The proposed class is defined as "all individuals admitted to the United States pursuant to Section 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C. §

1101(a)(15)(H)(ii)(a) ('H-2A Workers') who were employed by Lamont Fruit Farm Inc. to pick apples during the 2000, 2001, 2002, 2003, 2004, and 2005 Upstate New York apple harvest seasons."  (Pls.' Mem. in Support of Mot. to Certify Class at 4.)  The proposed class would be certified as to the second cause of action – the breach of contract claim – only.  (Id. at 1.)

### 1. Class Action Standards

The underlying purpose of the class action mechanism is to foster judicial economy and efficiency by adjudicating, to the extent possible, issues that affect many similarly situated persons. Califano v. Yamasaki, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); see also Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("The principal purposes of the class action procedure [are] promotion of efficiency and economy of litigation.").  In pursuing these goals, a district court is afforded broad discretion in determining whether an action should be certified under Rule 23.  See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201 (2d Cir. 2008); see also 7A Charles Alan Wright, et al., Federal Practice and Procedure § 179 (3d ed. 2005).  A court must engage in a rigorous analysis of the facts and circumstances of the case to ensure that class certification is appropriate.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160-61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Under Rule 23(a), one or more representatives of a class of plaintiffs may sue on behalf of all members of the class if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

6

(4) the representative parties will fairly and adequately protect
the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to the elements set forth above, Rule 23(b)(3) requires

a showing that "questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  Factors to be considered in making a determination under Rule 23(b)(3) include

(1) the interest of members of the class in individually controlling the prosecution or

defense of separate actions; (2) the extent and nature of any litigation concerning the

controversy already commenced by or against members of the class; (3) the desirability

or undesirability of concentrating the litigation of the claims in the particular forum; and (4)

the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ.

P. 23(b)(3); De La Cruz v. Gill Corn Farms, Inc., 2005 WL 5419056, *5 (N.D.N.Y. Jan. 25,

2005).  The burden is on the moving party to establish that class certification is warranted.

Iglesias-Mendoza, et al. v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007).

Before certifying a class, a court must make a ruling, based on the evidence in the

record, that each requirement of Rule 23 is met.  In re Initial Public Offerings Sec. Litig.,

471 F.3d 24, 27 (2d Cir. 2007).  In determining whether class certification is appropriate,

a court must resolve any factual disputes relevant to each Rule 23 requirement, even if

such resolution requires the court to consider the merits of the underlying claims.  Id. at 41.

"A district judge is to assess all of the relevant evidence admitted at the class certification

stage and determine whether each Rule 23 requirement has been met, just as the judge

would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."

Id. at 42.

If a court decides that class certification is warranted under Rule 23(b)(3), the court

must issue an order that defines the class and the class claims, issues, or defenses.  Fed.

R. Civ. P. 23(c)(1)(B).  The court also must appoint class counsel.  Id.  Additionally,

> For any class certified under Rule 23(b)(3), the court must
> direct to class members the best notice that is practicable
> under the circumstances, including individual notice to all
> members who can be identified through reasonable effort.  The
> notice must clearly and concisely state in plain, easily
> understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an
> attorney if the member so desires;
> (v) that the court will exclude from the class any member who
> requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under
> Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Any judgment in a class action under Rule 23(b)(3) must

"include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who

have not requested exclusion, and whom the court finds to be class members."  Fed. R.

Civ. P. 23(c)(3)(B).

## 2. Rule 23(a) Requirements

### a. Numerosity and Impracticality of Joinder

As noted, the proposed class is defined to include all H-2A workers employed by

Defendant during the 2000-2005 apple harvesting seasons.  Citing the clearance orders

submitted by Defendant to obtain permission to hire the foreign Workers, Plaintiffs maintain

that this class potentially consists of 382 H-2A workers.  Defendant claims, however, that

many of these workers were repeat hires.  Citing its employment list, Defendant asserts that the number in the affected class is significantly lower, consisting of 134 workers. (See Docket No. 28, Ex. 7, pp. 9-11.)

Plaintiffs also point out that the putative class members are foreign nationals, many of whom do not live in this country, are not fluent in English, and are unfamiliar with the American legal system.  Plaintiffs have provided several affidavits from the representative class members to support these assertions.  (See  Declaration of Juan Vazquez (Docket No. 16, Ex. 9); Declaration of Pablo Marin (Docket No. 16, Ex. 10); Declaration of Alejandro Loaeza (Docket No. 17); Declaration of Cirilo Pacheco (Docket No. 18); Declaration of Emiterio Pacheco (Docket No. 19); Declaration of Hector Avendano (Docket No. 20).)

In the Second Circuit, it is established that "numerosity" and impracticality of joinder are presumed when the proposed class totals at least 40.  Consol.  Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); MacNamara v. City of New York, 275 F.R.D. 125, 137 (S.D.N.Y. 2011); Iglesias-Mendoza, 239 F.R.D. at 370.  Because here there are admittedly at least 134 workers, many of whom are foreign nationals without command of English or knowledge of our judicial system, the numerosity and impracticality of joinder requirements are satisfied.

### b.  Commonality and Typicality

Rule 23(a)(2) requires that there are "questions of law or fact common to the class," and Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and

adequately protected in their absence.'" <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997) (quoting <u>Falcon</u>, 457 U.S. at 157 n.13).

As Plaintiffs point out, there are several questions of law and fact common to the class members here.   Importantly, Plaintiffs allege that Defendant breached its employment contracts with the Workers by systematically failing to reimburse the Workers for recruitment and travel-related fees incurred for the benefit of Defendant.  This allegation is the thrust of Plaintiffs' wage-related claims in this case.  Moreover, Defendant does not dispute that, as a matter of policy, it did not reimburse the Workers for the fees in question, and it appears to be undisputed that all of the Workers incurred these fees.  This allegation therefore presents factual and legal questions common to the proposed class.

Plaintiffs also allege that Defendant failed to keep adequate payroll records as required by the contract.  The adequacy of the payroll records appears to present a common question of law and fact because it turns on Defendant's conduct alone and has general applicability to the Workers as a group.

Several of the allegations, however, are dependent on more individualized determinations of fact and/or law.  First, Plaintiffs allege that Defendant breached the employment contracts by failing to timely provide the Workers with copies of the contracts. Because Defendant has not admitted to a wholesale failure to provide the contracts, (Answer at 3), this claim turns on facts pertaining to each individual Worker; namely, whether and when each Worker received a copy of the contract.  Second, Plaintiffs allege Defendant failed to provide safe and adequate housing to the Workers.  Because the Workers lived in different camps at different times and experienced different living conditions, it likely would be impossible to make a class-wide determination of liability on

this issue, at least based on Plaintiffs' broad class definition.  Third, Plaintiffs allege that Defendant breached the contract in 2004 by failing to provide safe transportation to the Workers during that season.  By definition, resolution of this allegation would apply only to the Workers employed during the 2004 season, and not to the class as a whole.

Despite these individualized aspects of the case, as Plaintiffs point out, it is not necessary that all of the factual and legal issues in a putative class action be common to the class as a whole.  Rather, "commonality" may be found if the putative class members "share *at least* one common question of law or fact."  Weigmann v. Glorious Food, Inc., 169 F.R.D. 280, 285 (S.D.N.Y. 1996) (emphasis added).  The wage claims provide commonality here.

The requirement of typicality does not appear to be in dispute.  All of the named Plaintiffs are workers who participated in the H-2A program and traveled to Defendant's farm from Mexico to work.  They were subjected to the same payment policies and working conditions, and they lived in the same labor camps, as the rest of the Workers. (See Compl. ¶¶ 17-26; 86-90; 93-94; 97.)  The named Plaintiffs and the class as a whole would use similar legal arguments and theories to support their claims.  Marisol A., 126 F.3d at 376 (typicality is satisfied when each class member's claim arises from the same events and is supported by similar legal arguments).

### c.  Adequacy of Representation

In evaluating the adequacy of representation of a class, courts employ a two-part inquiry.  First, Plaintiffs must show that class counsel is "qualified, experienced, and generally able to conduct the litigation."  Marisol A., 126 F.3d at 378 (quoting *In re* Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  Second, Plaintiffs must

11

demonstrate that the proposed class representatives have no conflicts of interest with the other members of the class.  In other words, the representative class members must not have interests "antagonistic" to those of the class.  Wolfert v. Transamerica Home First, Inc., 439 F.3d 165, 173 (2d Cir. 2006) (citing In re Joint Eastern and Southern Dist. Asbestos Litig., 78 F.3d 764, 778 (2d Cir. 1996)).

The parties do not dispute that the proposed class counsel are experienced and competent to represent the class.  As Plaintiffs point out, proposed counsel are experienced both in class action litigation and in representing farm workers.  (Declaration of Anita Butera (Docket No. 16); Declaration of Steven Cole (Docket No. 16, Ex. 11); Declaration of Laurie Giordano (Docket No. 16, Ex. 12).)

Defendant contends, however, that the representative class members cannot adequately represent the class for several reasons.  First, Defendant argues that Plaintiff Juan Vazquez has an "adversarial relationship" with Defendant as a result of a work-related injury he sustained on Defendant's farm.  Plaintiff Vazquez filed a workers' compensation claim to recover for this injury. Defendant also points out that, following his injury, Mr. Vazquez stopped working and did not reside in the labor camps during a portion of the 2004 season or during 2005.  Second, Defendant states that several of the named Plaintiffs might be in the United States illegally.  According to Defendant, illegal status would render these Plaintiffs ineligible to represent the class because it would reflect on their honesty and trustworthiness.  Third, Defendant states that several of the named Plaintiffs voluntarily abandoned their employment with Defendant midway through the 2005 season and went to work for another farm.  Defendant maintains that Plaintiffs who were not working for Defendant the entire season at issue cannot fairly represent the class.

12

This Court disagrees that either Plaintiff Vazquez's workers' compensation claim would render him unable to adequately represent the Workers. Nothing in the record suggests that Plaintiff Vazquez's workers' compensation claim against Defendant would cause his interests to be "antagonistic" to those of the other Workers. See De La Cruz, 2005 WL 5419056, at *4 ("The fact that Ms. Alvarez has a workers' compensation claim against Defendant does not suggest any conflict of interest with other potential class members."). Similarly, the fact that some of the Plaintiffs left Defendant's employment during one season (the parties dispute whether this departure was voluntary or forced by Defendant) does not render the Plaintiffs' interests antagonistic to those of the Workers, as it appears that other class representatives were employed with Defendant during that time.

Further, illegal status does not in itself render class representatives ineligible, and Defendant has pointed to no evidence suggesting these Plaintiffs are dishonest or untrustworthy. See Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 87 (S.D.N.Y. 2001) ("Defendants' concerns regarding the immigration status of the various named Plaintiffs as bearing on their potential credibility and fitness as class representatives are without merit[.]").

### 3. Rule 23(b)(3) Requirements

#### a. Predominance of Common Questions of Law or Fact

Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." To meet this requirement, Plaintiffs must show that the issues requiring generalized proof are more substantial than the issues requiring individualized proof. See Myers v. Hertz Corp., 624

13

F.3d 537, 550 (2d Cir. 2010). "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" <u>Iglesias-Mendoza</u>, 239 F.R.D. at 372 (quoting <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002)).

In general, courts will focus on issues of liability, as opposed to damages, in determining predominance. <u>Id.</u> at 372-73. "[I]f the liability issue is common to the class, common questions predominate over individual ones." <u>Id.</u> at 373 (quoting <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002)).

The issue of whether Defendant failed to pay minimum wage to the Workers clearly is common to the class. This question is ideal for class action treatment, <u>see</u> <u>id.</u>, as is the question of whether Defendant maintained adequate payroll records. Moreover, the minimum wage question is the primary issue to be resolved in determining whether Defendant breached its employment contracts with the Workers. Thus, although there are other breach-of-contract allegations that do not present common issues of liability, this Court finds Plaintiffs have satisfied the predominance requirement. <u>See</u> <u>id.</u> (finding predominance where the common issues to be litigated were whether the workers were paid minimum wage and overtime); <u>Rosario-Guerro v. Orange Blossom Harvesting</u>, 265 F.R.D. 619, 629 (M.D. Fla. 2010) (common questions predominated where H-2A workers alleged breach of contract based on failures to reimburse for pre-employment expenses, pay for time watching training videos, and keep adequate pay records); <u>Napoles-Arcila v. Pero Family Farms, LLC</u>, 2009 WL 1585970, *8 (S.D. Fla. June 4, 2009) (predominance established where breach of contract claims depended on question of whether defendant failed to reimburse worker expenses).

### b.  Superiority of a Class Action

In determining whether a class action is the superior method for adjudication, a court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).  The first three factors weigh in favor of a class action in this case. The Workers undoubtedly have little interest in individually controlling separate actions. See Iglesias-Mendoza, 239 F.R.D. at 373 (noting the low probability that low-wage workers with limited knowledge of English or the American judicial system would be interested in pursuing individual actions) (citing McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005)).  The parties have not identified any related litigation brought by or against the proposed class members.  Further, because all of the events leading to this action arose in this District, and because Defendant's farm is located here, this forum is a desirable one for a class action.

With respect to the fourth factor, Plaintiffs contend that a class action would be manageable because proposed counsel are experienced in handling class actions involving Mexican migrant farm workers.  Plaintiffs also argue that handling the litigation in piecemeal fashion could be administratively difficult and costly for all involved.

This Court agrees that, in general, these claims would best be handled in a class action format.  It is true that there might be difficulties in providing adequate notice to the Workers because of their demographics, foreign location, and the length of time that has

passed since their employment with Defendant.  See De La Cruz, 2005 WL 5419056, at

*5.  However, the identities of the putative class members appear to be ascertainable from

Defendant's employment lists, and proposed class counsel has assured this Court of their

commitment to prosecuting this case on behalf of the class, which would include best

efforts to provide notice to the class.  Additionally, this Court concludes that class action

litigation would provide a greater measure of justice for all of the parties.  The Workers

would be able to vindicate their rights (which generally would be infeasible in the absence

of a class action), and all of the parties would benefit from a final judgment on these

issues.

Defendant, however, argues that class certification in this case is inferior because

the underlying merits of the breach of contract claim bear in favor of Defendant.  (Def.'s

Resp. to Mot. to Certify Class and Mem. in Support of Mot. Partial Summ. J. (Docket No.

29) at 2.)  As such, according to Defendant, maintenance of a class action would be a

wasted and costly venture.

The primary allegation underlying the breach of contract claim is that Defendant was

required to reimburse the Workers the fees they paid for job recruitment in Mexico, visas,

passports, and border crossings.  According to Plaintiffs, Defendant's failure to reimburse

these expenses during the first week of work resulted in the Workers being paid less than

the statutorily-mandated minimum wage for that week, in breach of the employment

contract (and in violation of the FLSA and state law).  Defendant argues at length that it

had no legal duty to reimburse these costs; as such, Defendant maintains that the Workers

were paid the required wages for every week of work.  Defendant also argues that it acted

in good faith because it was not on notice that it owed the Workers any additional payment,

16

and because it was industry custom to not reimburse the disputed expenses.

In *In re* Initial Public Offerings Securities Litigation, 471 F.3d 24, 27 (2d Cir. 2007), the Court of Appeals for the Second Circuit acknowledged that "[s]ome overlap with the ultimate review on the merits is an acceptable collateral consequence of the 'rigorous analysis' that courts must perform when determining whether Rule 23's requirements have been met." Id. at 37 (citing Falcon, 457 U.S. at 161).  However, the court cautioned:

> To avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation, a district judge must be accorded considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements.

Id. at 41.  Thus, the Second Circuit did not condone an in-depth analysis of the merits of the action as part of a Rule 23 determination.

Here, it is unnecessary and premature to delve into the merits of the issue described above, because the Rule 23 requirements have been established on the record before this Court.  Even assuming Plaintiffs' legal position on the underlying claim was weak (as noted, this is a controversial area of federal law), the interests of justice warrant adjudication of the claim in a class action format.  Moreover, the trend in this District has been in Plaintiffs' favor on the underlying legal issue.  See generally Salazar-Martinez v. Fowler Bros., Inc., 781 F.Supp.2d 183 (W.D.N.Y. 2011); Teoba v. Trugreen Landcare LLC, 769 F.Supp.2d 175 (W.D.N.Y. 2011).

Defendant also relies on De La Cruz in support of its argument that class treatment is not superior in this case.  In De La Cruz, the district court denied the motion for class certification on the farm workers' claim under New York Labor Law.  2005 WL 5419056, at *2.  Several of the concerns identified in De La Cruz are not applicable here.  First, the

De La Cruz court found the class definition to be too broad and dependent on a legal conclusion not yet reached in the case.  2005 WL 5419056, at *6.  Here, the proposed class is fact-based and readily identifiable.  Second, the court was concerned that potential class members would be confused about their rights, because the case involved both an "opt-in" collective action under the FLSA and an "opt-out" Rule 23 class action.  Id.  This case does not involve such a dual certification.

Third, the De La Cruz court noted that an opt-out class action on the state labor law claim would appear to thwart Congressional intent to limit representative wage claim actions in federal court.  The court stated it would be inappropriate to assert subject matter jurisdiction over a large class action on the state claims.  Id. at *7.  Although these are valid concerns, in this case the class is well-defined, and the breach of contract claim necessarily turns on a disputed question of federal law (namely, whether Defendant was required, under federal law, to reimburse the Workers for their travel related fees).  Compare De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003) (overturning the exercise of supplemental jurisdiction over a state class action claim involving more than 4,000 class members and several novel questions of state law).  Thus, the jurisdictional problems outlined in De La Cruz are not present here.

Fourth, the De La Cruz court pointed out that it might be simpler to resolve the key legal issues before undertaking a class action, which would serve to streamline the issues to be decided in the case.  2005 WL 5419056, at *8.  This approach, however, seems to run contrary to the Second Circuit's caution in In re Initial Public Offerings Securities Litigation that a court should not immerse itself in the merits of a case except to the extent necessary to determine whether Rule 23 has been satisfied.  As discussed above, this

18

Court concludes it is unnecessary to address the underlying merits of the breach of contract claim at this juncture.

### 4.  Appointment of Class Counsel

Having determined that certification of a Rule 23(b)(3) class action is merited, this Court must appoint class counsel.  Defendant does not oppose the appointment of the Farmworker Legal Services of New York and Leclair Korona Giordano Cole LLP. Accordingly, those firms will be appointed as class counsel.

### B.  Motions for Summary Judgment

Both parties have moved for partial summary judgment.  Defendant seeks summary judgment on the question of whether, as part of its duty to pay minimum wage under the FLSA, it was required to reimburse them for their recruitment, visa, passport, and border crossing fees.  Defendant also seeks summary judgment on the breach of contract and New York Labor Law claims to the extent those claims are based on an alleged failure to pay minimum wage due to insufficient reimbursement of the Workers' inbound transportation costs.  (Docket No. 28.)  Plaintiffs seek summary judgment on liability as to named Plaintiffs Juan Vazquez and Pablo Marin only.  They also move for a ruling that Defendant is "liable to all similarly situated Plaintiffs for passport, visa, and border-crossing fees."  (Docket No. 31, Ex. 19, at 1.)

The question of whether Defendant had a legal duty to reimburse the recruitment, visa, passport, and border crossing fees might be a purely legal one, in the sense that it is undisputed the Workers incurred such fees and Defendant, as a matter of policy, did not reimburse them.  This legal issue at least partially underpins the claims for relief under the FLSA, New York Labor Law, and the employment contracts.

In the interest of fairness, however, this Court concludes it is premature to rule on this question, or any other dispositive issue bearing on the breach of contract claim, until the putative class members have been provided with notice and an opportunity to opt out of the suit.  Once the group to be bound by the judgment has been defined, this Court properly may entertain appropriate dispositive motions and/or a proposed settlement. See Philip Morris Inc. v. Nat'l Asbestos Workers Medical Fund, 214 F.3d 132, 135 (2d Cir. 2000) (*per curiam*) (noting that, in general, issues related to class certification should be decided prior to a decision on the merits) (citing cases).  Accordingly, this Court will deny both parties' motions for partial summary judgment without prejudice.

## IV.  CONCLUSION

For the reasons discussed above, this Court concludes that Plaintiffs' motion to certify a class action with respect to their breach of contract claim should be granted.  The parties' motions for summary judgment will be denied without prejudice.

## V. ORDERS

IT IS HEREBY ORDERED, that Plaintiffs' Motion for Class Certification with respect the second cause of action in the Complaint (Docket No. 15), is GRANTED.

FURTHER, that the class shall be defined as follows:   All individuals admitted to the United States pursuant to Section 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A Workers") who were employed by Lamont Fruit Farm Inc. to pick apples during the 2000, 2001, 2002, 2003, 2004, and 2005 Upstate New York apple harvest seasons.

FURTHER, that Farmworker Legal Services of New York and Leclair Korona Giordano Cole LLP are appointed as class counsel.

FURTHER, that the parties have thirty (30) days from the date of this Order to negotiate and file with this Court a mutually agreeable class notice, containing the information required by Federal Rule of Civil Procedure 23(c)(2)(B).  If the parties cannot agree on the proposed notice, they are directed to file competing proposed notices.

FURTHER, that Defendant's Motion for Partial Summary Judgment (Docket No. 28) is DENIED without prejudice.

FURTHER, that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 31) is DENIED without prejudice.

SO ORDERED.

Dated:    September 30, 2011
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court