UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUAN VAZQUEZ, PABLO MARIN,
CIRILO PACHECO, OSIEL VAZQUEZ,
ALEJANDRO LOAEZA, EMITERIO
PACHECO, HECTOR AVENDANO,
EFREN PACHECO, AVELINO CRUZ,
and RENE PACHECO, on behalf of
themselves and all other similarly
situated workers,

                         Plaintiffs,

        v.                                                    **DECISION AND ORDER**
                                                              06-CV-582S

LAMONT FRUIT FARM, INC.,

                         Defendant.

        This matter came up for hearing upon the parties' application for approval of the

settlement set forth in the Class Action Settlement Agreement (the "Settlement

Agreement").  (Docket No. 62-2.)  Due and adequate notice having been given to the

Class, and this Court having considered the Settlement Agreement, all papers filed and

proceedings had herein, and all oral and written comments received regarding the

proposed settlement, and having reviewed the record in this Litigation, and good cause

appearing,

        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

        1.      This Court, for purposes of this Judgment and Order of Dismissal

("Judgment"), adopts all defined terms as set forth in the Class Action Settlement

Agreement filed in this case.

        2.      This Court has jurisdiction over the subject matter of the Litigation, the Class

Representatives, the other Members of the Settlement Class, and Lamont Fruit Farm, Inc.

3.     This Court finds that the distribution of the Notice to Class Members as provided for in the Order Granting Preliminary Approval for the Settlement and the subsequent Stipulation modifying class notice, constituted the best notice practicable under the circumstances to all Persons within the definition of the Class and fully met the requirements of due process under the United States Constitution.  (Docket Nos. 58, 59, 60.)  Based on evidence and other material submitted in conjunction with the Settlement Hearing, the notice to the Class was adequate.

4.     This Court has previously certified a Class consisting of all individuals admitted to the United States pursuant to Section 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A Workers") who were employed by Lamont Fruit Farm, Inc. to pick apples during the 2000, 2001, 2002, 2003, 2004, and 2005 Upstate New York apple harvest seasons.

5.     With respect to the Rule 23 Class, this Court has found and concluded that: (a) the Members of the Rule 23 Class, many of whom are foreign nationals without a command of the English language or the United States' judicial system, are so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Rule 23 Class; (c) the claims of the Class Representatives are typical of the claims of the Members of the Rule 23 Class; (d) the Class Representatives have fairly and adequately protected the interests of the Members of the Rule 23 Class; (e) a class action is superior to other available methods for an efficient adjudication of this controversy and common issues predominate over individual issues; and (f) the attorneys of record for the Class Representatives, i.e., Class Counsel, are qualified to serve as counsel for the plaintiffs in their individual and representative capacities and for the Rule 23 Class.

2

6.      On March 15, 2012, this Court held a Fairness Hearing regarding final approval of the Settlement Agreement.  As provided in the Notice, the Class Members were given an opportunity to appear at the hearing and voice any objections they may have to the Settlement Agreement.  No Class Members appeared at the hearing to lodge objections against the Settlement Agreement.  At the hearing, this Court considered information presented by both parties concerning the settlement.

7.      Rule 23(e) requires that any settlement of a class action be approved by the court.  In reviewing a proposed class action settlement,  the court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); see also Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  The court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974).

8.      The fairness of the proposed settlement must be determined "by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." D'Amato, 236 F.3d at 85.  The court should analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) (citation omitted).  The court must be satisfied that the settlement was the result of "arm's-length negotiations" and that plaintiff's counsel engaged in the discovery "necessary to effective representation of the class's interests." D'Amato, 236 F.3d at 85.

9.     In evaluating the substantive fairness of a settlement, a district court must consider the following factors, if applicable:

> (1) the complexity, expense and likely duration of the litigation,
>
> (2) the reaction of the class to the settlement,
>
> (3) the stage of the proceedings and the amount of discovery completed,
>
> (4) the risks of establishing liability,
>
> (5) the risks of establishing damages,
>
> (6) the risks of maintaining the class action through the trial,
>
> (7) the ability of the defendants to withstand a greater judgment,
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and]
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

D'Amato, 236 F.3d at 86 (citation omitted); Grinnell Corp., 495 F.2d at 463.

10.     Finally, "public policy favors settlement, especially in the case of class actions." See In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005). "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982).

11.     This Court is altogether satisfied that the proposed settlement in this action meets both the procedural and substantive requirements set forth above.  As for the procedural requirements, counsel left no doubt at the Fairness Hearing that the settlement of this action was obtained through arm's-length negotiations, which were undertaken in

good faith by counsel who are fully familiar with all aspects of class action litigation.  It is clear to this Court that both the Class and Defendant were represented by experienced, professional, and zealous advocates, and this Court is therefore satisfied that the settlement was fairly negotiated.

12.     As for the substance of the proposed settlement, this Court is convinced based on an examination of the relevant factors that the proposed settlement is substantively fair, adequate, and reasonable.  First, arising under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), the class action here is complex, and implicates unsettled areas of applicable law.   Counsel realizes, and this Court agrees, that if settlement had not been achieved, both Plaintiff and Defendant faced the expense and uncertainty of extended litigation.  Moreover, this settlement permits a prompt resolution of the claims at issue, and prevents either party from risking a potential decision by the United States Supreme Court that would resolve the claims in favor of one party or the other.  Through this settlement, a resolution will be achieved at least months, and perhaps years, earlier than might otherwise be possible.  This is particularly so, given the difficulty Class Counsel would have in tracking Class Members over the course of several additional years of litigation.   Additionally, substantial resources and time would be required to complete discovery and prosecute or defend against claims in this action, adding significant cost and delay to this litigation.   Accordingly, this factor weighs in favor of approval.

13.     Second, no Class Member filed an objection to the proposed Settlement, which in this Court's view evidences the overall fairness of the Settlement Agreement.  One Class Member initially decided to opt out of the Settlement Agreement, but has since filed

a new form joining the settlement.  As of March 19, 2012, 97 Class Members, out of the 134 Class Members to have been sent class notices, have responded and opted to participate in the settlement.  This Court gives weight to the parties' judgment that the settlement is fair and reasonable, as well as to the favorable reaction of the Class to the settlement.

14.     Third, the parties engaged in document production, depositions and additional informal discovery over the course of this almost six-year old action.  At the Fairness Hearing, the parties represented that, based on their formal and informal discovery, they fully understood the factual context of the case as well as the attendant uncertainties.  This Court is satisfied that the parties reached a settlement agreement in this case after engaging in sufficient investigation of the facts so that each party was able to make an intelligent appraisal of the settlement.  See, e.g., In re Jiffy Lube Sec. Litig., 927 F.2d 155 (4th Cir. 1991) (finding that plaintiffs were sufficiently informed about the strength of the case as a result of information obtained through informal discovery).

15.     Fourth, both sides were faced with significant risks if the litigation continued to trial.  Plaintiff risked the possibility that, after lengthy and expensive litigation, no recovery would be received.  Moreover, the risks of litigation are more than just hypothetical in this case.  Class Counsel reports that the Circuits are split on issues involved in this litigation and the Federal Government has considered further rule-making in this area.  Likewise, this Court notes that Defendant, too, risked the possibility that drawn-out, expensive litigation could result in costs and damages in an amount more significant than the known cost of this settlement.

16.     In addition, the risks of maintaining the Class throughout the litigation were

real. Class Members, as H-2A Workers, enter and work in the United States on a seasonal basis. As such, the logistical challenges of tracking them when they are outside the United States are formidable. This is heightened by any suspicion Class Members may have that becoming involved in litigation will adversely affect their ability to continue working in the United States.

17.     Finally, there is no evidence that Defendant could not have withstood a greater judgment in this case. Although this factor tends to weigh against settlement, here, Defendant's ability to withstand a judgment greater than the settlement amount appears not to have been a factor in the negotiations. The total settlement amount is $401,874.59. This figure was largely derived by applying the parties' agreed-upon formula of providing each Class Member with a payment bringing their first week's wage in line with the federal minimum wage, in addition to 25% liquidated damages and 9% interest payable to late 2010. This Court finds that the final settlement figure is within the range of reasonable settlements that would have been appropriate, given the number of individuals involved, and their respective circumstances. Further, the amount of the settlement is reasonable in light of the attendant risks of litigation to both sides.

18.     Accordingly, for the reasons discussed above and those stated on the record at the Fairness Hearing, this Court finds that the releases and other terms of the proposed settlement, as set forth in the Settlement Agreement, are fair, adequate, and reasonable as to the Settling Parties, and not a product of collusion. Consequently, the settlement is approved. The Settling Parties are directed to perform in accordance with the terms set forth in the Settlement Agreement.

19.     The Defendant shall pay to Class Counsel a total of $401,874.59 to create

7

a settlement fund in this matter.  The payment shall be made within thirty days of the date of this Order.

20.    Class Counsel Farmworker Legal Services of New York, Inc. n/k/a Worker Justice Center of New York, Inc. shall administer the settlement fund.

21.    Each Class Member who presents a timely and valid claim shall receive from the settlement fund the amount designated in Exhibit A of the Stipulation of Proposed Settlement.  (Docket No. 62-2.)

22.    In addition to the amounts provided for in Exhibit A to the Stipulation of Proposed Settlement, the named plaintiffs shall be paid lump sum payments from the settlement fund as follows: $7,000 to Pablo Marín, $3,000 to Juan Vázquez, and $625 to each remaining named plaintiff.

23.    Class Counsel is awarded from the settlement fund the sum of $130,000 for their out-of-pocket expenses and attorney's fees, as provided for in the Stipulation of Proposed Settlement.  In light of Class Counsel's representations at the Fairness Hearing and upon review of Class Counsel's submission of contemporaneous time records and affidavits in support of the proposed attorney's fees (Docket Nos. 62-3, 62-4, 62-5), this Court finds that the amount of fees and costs requested by Class Counsel is justified.  This Court further finds that both the fees and costs requested by Class Counsel are fair and reasonable.  Lamont Fruit Farm, Inc. is directed to make such payments in accordance with the terms of the Settlement Agreement.

24.    Any funds remaining in the settlement fund after December 31, 2012, which have not been claimed by Class Members in accordance with the Settlement Stipulation, shall be paid to the Rural and Migrant Ministry in Poughkeepsie, New York.

25.     Any Class Member who has duly and timely requested exclusion from the Class may pursue his or her own individual remedy against Defendant, if any, but not any class action based on the claims raised in this lawsuit.

26.     Lamont Fruit Farm Inc., as defined in paragraph 1(a) of the Settlement Stipulation, including subsidiaries, past and present officers, directors, agents, attorneys, parent corporations, related entities and affiliates, if any, and their respective successors, heirs and assigns, upon payment of the settlement amount to Class Counsel, is hereby released from all damage and other claims relating to the employment during the 2000 – 2005 apple harvests of the Plaintiffs and all other Class Members who do not seek exclusion, their heirs, representatives, agents, attorneys, successors, or assigns, or anyone claiming on their behalf, which have been raised or asserted in this action, or which could have been raised or asserted in this action.

27.     This Court reserves exclusive and continuing jurisdiction over the Litigation, the Class Representatives, the Settlement Class and Lamont Fruit Farm, Inc. for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement and this Judgment.

28.     This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

IT HEREBY IS ORDERED, that the parties' Joint Motion for Settlement Approval and Approval of Class Counsel's Request for Attorney Fees (Docket No. 62) is GRANTED.

FURTHER, that this Court hereby approves the settlement set forth in the Settlement Agreement and finds that the settlement is, in all respects, fair, reasonable,

adequate, and in the best interests of Plaintiff and the Class in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, and directs implementation of all its terms and provisions.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   March 26, 2012
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court